The next case for today is case number 415-0725, People of the State of Illinois v. Antonio Sibley. And for the appellant we have Ms. Wilson, is that correct? Kiara Wilson. Kiara Wilson. And is that your, it's Salome Kiara Wilson? Salome Kiara Wilson. Salome Kiara Wilson. All right, thank you. And for the appellee we have Ms. Brooks. You may proceed. May it please the court, counsel. My name is Salome Kiara Wilson and I represent the Office of the State Appellate Defender on behalf of Mr. Antonio Sibley. I will be arguing the Krankel and Batson issues this afternoon, but would be glad to take any questions that the court may have on the other claims that Mr. Sibley raised in his brief. The trial court erred in this case by failing to conduct a Krankel inquiry despite Mr. Sibley's repeated attempts to bring his claims of ineffective assistance before the trial court. When a defendant brings a pro se claim of ineffective assistance to the trial court, the court is required to hold a preliminary inquiry to determine the factual basis of the defendant's claims and then appoint counsel if the court finds that the claims merit counsel and then set a hearing at which point appointed counsel is supposed to help the defendant present his ineffective assistance claims. That did not happen in this case. Mr. Sibley filed two motions and an affidavit all alleging that trial counsel was ineffective, but the court never once addressed any of these claims. What impact does the removal of Mr. Jones by the public defender and replacement with, I believe, Ms. Hawkins, what impact does that have on this Krankel claim? It doesn't have an impact on the court's duty to still have the preliminary inquiry and determine whether or not Mr. Sibley should have had counsel specifically to represent him on his ineffective assistance claims. The claim is not moved because of that? No. In the first instance, counsel was not, Ms. Hawkins was not appointed by the court. She was switched out by the public defender's office. And secondly, she was not appointed, again, by the court with the sole mandate of assisting Mr. Sibley to present his ineffective assistance claims. But she did adopt his pro se motion, is that correct? She does. She adopts his pro se motion, but again, she never addresses it during the hearing. And even after her appointment, I believe it's on June, it's a month after her appointment that, no, sorry, the next year, he files another motion, an affidavit this time, still alleging ineffective assistance of counsel. So even after her appointment, even after her adoption, which, again, she never addresses, he's still raising the same claims, and the trial court, again, never addresses any of them. So because the purpose of appointing the new counsel is effectively to address these claims, and if counsel feels that there is no claim, counsel would have returned to court to say so, we ask that this court remand Mr. Sibley's case for a new crank court hearing. During voir dire, in this case, the prosecutor used a preemptive strike to strike the only African-American veneer member from the jury. This was error because under Batson, not even a single veneer member can be struck based off of race. The reasons that the state gave for striking Ms. Kral both applied to white jury members who were allowed to serve. In the first instance, one is a jury member and the other is an alternate. The state gave two reasons. One, that Ms. Kral had a neutral view of police. And secondly, that she had said that she had a friend or family member who had had a negative experience or had been treated unfairly by the police. The fact that she had a neutral view of police was something that was expressed by Ms. Alderson, who later was allowed to serve as an alternate. And the fact that she had a friend or family member who had been treated unfairly by police was a reason that, or rather was a trait that Ms. Varvel, who was allowed to serve on the jury, had. Because Ms. Kral exhibits traits that were exhibited by white jury members who were allowed to serve presents an inference that these were pretextual reasons and the court should not have accepted them from the state as the reason for striking Ms. or for denying Mr. Sidney's Batson claim. Similarly situated, or rather doing a comparative analysis that looks at these jury members as they are similarly situated, doesn't mean that they have to be identical in all aspects. In Miller L, I believe it's footnote 4, the court says that jury members or veneer members are not cookie cutter. Therefore, similarly situated jury members don't have to be identical in all aspects and the combination of traits in one person doesn't necessarily defeat the inference that the state was using pretextual reasons. And in this case, the reasons for striking Ms. Kral are not necessarily negative reasons to begin with that make the combination of them in her more negative than they were in the separate white jurors. And therefore, and she possesses no other negative traits. Therefore, it was, the court should have done more or rather the court should not have struck Mr. Sidney's Batson claim based off of the state's reasons. Are there any questions? I don't see any at this time. Thank you. Thank you. You'll have time on rebuttal if you so desire. Ms. Brooks? Thank you, Your Honors. I'm Allison Paige Brooks. I'm appearing on behalf of the people. May I please the court and counsel? With respect to the Batson issue, there were two reasons expressed by the prosecutor for excusing Ms. Kral. And that's because she did not, was at that point the only person who had not expressed a positive opinion of law, a general opinion of law enforcement. And also, she had claimed to know someone who was not treated fairly in a Macon County case. The other two jurors, which the defendant cites in the comparative analysis, Ms. Barbel and Ms. Anderson, did not have both of those traits, but had only one. Ms. Anderson, Ms. Barbel had expressed a positive general opinion of law enforcement and therefore was acceptable to the prosecutor. And Ms. Alderson, she had believed that a close friend or family member had been treated fairly. So, this is actually similar to the Williams case, which is binding, in which case there were two reasons. And other jurors had either of a trait, but never both. And for those reasons, this court should defer to the trial court's findings, the implied findings of credibility and demeanor and state of mind, which apply to the prosecutor, which is very important in this sort of analysis of pretext, of a claim of pretextual reasons. And because those determinations are within the trial court's province, the trial court's ruling should receive great deference. And so, therefore, also I believe the defense never raised below specifically the argument that the prosecutor's reason was pretextual and is pursuing that claim, specific claim, of pretextual reasons for the first time on appeal. And so, therefore, another reason not to grant a new trial in the Batson issue. With respect to Crankle, after Crankle, there was a case called Nitz, N-I-T-Z. And that is the one that developed the idea of preliminary inquiry in determining whether a new public defender should be appointed. Well, this case involves a situation where the chief public defender, Rodney Forbes, who is responsible for assigning public defenders, reassigned out the public defender, Stephen G. Jones, of whom the complaint of ineffective assistance was lodged against. The new public defender, Monica J. Hawkins, then adopted the defendant's pro se filings, which contained his complaints of ineffective assistance. So the defendant says, well, Hawkins was not appointed by the court, but she was a court-appointed public defender. The public defender gets to decide who the actual assistant public defender would be, not the trial court. The trial court could, under Crankle procedure, order a new public defender, for example, like Stephen G. Jones, to no longer represent the defendant, but cannot choose Monica J. Hawkins to be the next public defender. That's the prerogative of the chief public defender, Rodney Forbes. And he exercised that before any preliminary hearing could have been held. Therefore, the issue of the preliminary inquiry under NIST is moved because the defendant did receive new counsel, and the old counsel, Stephen G. Jones, no longer had that duty of arguing his own ineffectiveness, which is the whole point of the Crankle problem, which is remedied with the qualification of NIST, that is, that in every case, the trial court is not obligated to ensure that the defendant received a new public defender upon the defendant making a pro se complaint of ineffective assistance. The whole idea of the preliminary inquiry was to ensure that only appropriate cases, the defendant received a new counsel. So he did receive new counsel, therefore there's no reason to remand for another hearing, or for a hearing on Crankle. Briefly as to the suppression issue, there was probable cause. In this case, there's a photograph the police received by one eyewitness, and then a second eyewitness then identified that defendant, the defendant's last name, Sibley, and then also identified him in particular from a photo lineup. That's enough to make sure that the initial statements the defendant made to the police after his arrest would not be subject to suppression, and that issue would not be meritorious, and the defense attorney would not be ineffective for failing to seek suppression of those statements. The defendant's statements to Ed Cole, however, even if they were obtained in violation of the Defense Sixth Amendment right of counsel, because he was represented by an attorney at that time, these are different from post-arrest statements. This is actually after adversary proceedings had begun, and he is represented by an attorney. And these statements are then obtained by an investigator for the prosecution outside of the presence of his counsel. However, if the defense attorney knows that those initial statements are coming in, and that these later statements are more exculpatory, for example, the defendant claims self-defense, then he later says that there was no gun in the car, before trial, not knowing what the defendant is going to say on the stand necessarily, it could be a reasonable trial strategy to let those statements come in and not be subject to a pretrial suppression motion. So therefore, on this record, the defendant has not met his burden of showing his counsel was incompetent or acted unreasonably with respect to those later statements. And also, the defendant cannot establish prejudice simply from those later statements alone. There is no reasonable probability that he would have been acquitted, given that if there was probable cause and that the post-arrest statements were coming in, that he still would have been convicted of this crime. That he would not have been acquitted because he did have some admissions that would not be subject to suppression. So for those reasons, I would request this court to affirm the conviction, and I would also entertain any questions you have. Thank you, counsel. Any rebuttal? As to the Batson issue, counsel cites People v. Williams. But in People v. Williams, the juror that was struck for having negative traits, not only had traits that were combined in him from other jurors, but he had additional negative traits. And I just want to reiterate that under Miller L., having a combination of negative or so-called negative traits in one person doesn't defeat the inference that the reasons are pretextual. The court can still analyze it because, again, jurors are not cookie cutters. As to the comparative analysis and the fact that the defense did not do a comparative analysis or ask the court to, that, again, is not fatal to Mr. Sibley's claim because, as in Snyder v. Louisiana, the court conducts that comparative analysis on appeal even though it was not done at the trial level. For the motion to suppress and the ineffective assistance of counsel, the photograph from the first witness, there's no way to identify anyone from that photograph. Therefore, for the second witness to say that he identified Mr. Sibley from that and that to be the basis for the police to show a lineup is, for counsel not to raise that or challenge it on any level, was ineffective assistance. And with that, those statements after his arrest, with lack of probable cause, counsel should have challenged those. And with those gone and the second statements gone, because those second statements were, they did contain some exculpatory information, but mostly they gave more detail of the crime. And, therefore, counsel should have struck that even with the first statements coming in because it was more against his client, more evidence against his client. But, again, with the second witness' identification was not solid and trial counsel had no reasonable reason for not challenging it. And for those reasons, we ask that you arrest Mr. Sibley's conviction or remand for a new crime for the Batson hearing. All right. Thank you, counsel. We'll take this matter under advisement and be in recess until the next case.